Davis v. Reamer et al.

Filed Feb. 12, 1886.

No. 12,213.

## DAVIS v. REAMER ET AL.

AGENCY.—*Authority to Receive Property at "Landing."—Wharf-boat.—Negligence.—Liability of Wharfinger.*—One who has authority to receive and take property from a "landing" has authority to receive and take it from a wharf-boat stationed and used at a particular wharf, and constituting one of the landing facilities, and for the negligence of his agents in removing the property from the boat, resulting in the loss of such property, the owner of the wharf-boat is not liable.

INTERROGATORIES TO JURY.—*Answers to Must be Considered as a Whole.—General Verdict.*—Where the jury's answers to interrogatories, taken as a whole, are consistent with the general verdict, the latter will stand, although some answers separately are seemingly inconsistent therewith.

INSTRUCTIONS TO JURY.—*Harmless Error.—Practice.*—A judgment will not be reversed on account of an erroneous instruction which results in no injury to the appellant.

From the Floyd Circuit Court.

*J. H. Stotsenburg* and *J. V. Kelso*, for appellant.

*A. Dowling*, for appellees.

NIBLACK, C. J.—The appellees, Hiram J. Reamer and Madison M. Hurley, were the owners of a wharf-boat stationed at the wharf, otherwise known as the "landing," at the city of New Albany, in this State, and used as a warehouse in the storage of freight shipped to, as well as from, that city upon steamboats and other vessels navigating the Ohio river.

The appellant, Hiram W. Davis, resided and was in business at the city of Cincinnati, in the State of Ohio, and at the time of the transaction hereinafter referred to, one Anderson was his travelling agent and salesman, engaged in the business of his agency at and in the vicinity of New Albany. Anderson ordered Davis to ship a lot of buggies and perhaps other vehicles to him at New Albany, and requested one Philip M. Kepley, the proprietor of a livery stable, to receive and take charge of the vehicles when they arrived at New Albany. Davis accordingly shipped to Anderson's address at New Albany by steamboat, a lot of buggies, including a barouche worth $200. Kepley intended to take the vehicles directly from the steamboat to his stable, so as to save the expense of storage, but they came to New Albany in the night time, and were put off onto the wharf-boat before he received notice of their arrival at that city. The appellees, however, made no charge for the storage of the vehicles. Charles A. Kepley, a son of Philip M. Kepley, being at the time his father's assistant and to some extent, at least, his business manager in connection with the livery stable, on the next morning took with him two other persons and went on board the wharf-boat for the purpose of taking the vehicles off and removing them to the livery stable. He and his assistants brought the barouche forward and left it standing for a few minutes on the floor between the two opposite and open doors of the wharf-boat, whence, by reason either of a gust of wind or of some sudden motion of the boat, the barouche ran off and into the river and was lost. Davis thereupon brought this action against Reamer and Hurley for the loss of the barouche, upon the ground that they had negligently and improperly permitted young Kepley to interfere with, and to assume control of the vehicles. At the first trial Davis recovered judgment, but that judgment was reversed by this court. See Reamer v. Davis, 85 Ind. 201. At a subsequent trial the jury returned a general verdict in favor of the appellees, together with answers to interroga-

tories submitted to them at the request of the parties respectively.

In response to interrogatories addressed to them, at the request of the appellant, the jury answered substantially:

*First.* That the appellant was the owner of the barouche at the time it was lost.

*Second.* That the barouche was worth $200.

*Third.* That neither Reamer nor Hurley did anything to make the barouche secure after it was placed between the two open doors of the wharf-boat.

*Fourth.* That neither Reamer nor Hurley said or did anything to prevent young Kepley and his assistant from removing the barouche from the place at which it was stored on the wharf-boat.

*Fifth.* That neither Reamer nor Hurley did anything towards having the barouche taken from the wharf-boat and delivered upon the adjacent landing.

*Sixth.* That if either Reamer or Hurley had arranged to have the wheels of the barouche chocked after it was brought out and placed between the doors of the wharf-boat, it would probably not have been lost overboard.

*Seventh.* That Philip M. Kepley expressly directed his son Charles to let the buggies and barouche alone, until the charges upon them were paid, and everything was arranged for their removal.

*Eighth.* That it was not shown that young Kepley had any authority to remove the buggies and barouche from the wharf-boat.

*Ninth.* That neither Reamer nor Hurley inquired as to the authority of young Kepley to remove the buggies and barouche from the wharf-boat.

*Tenth.* That the only authority which Philip M. Kepley had from Anderson was "to receive the carriages or buggies from the landing and save the expense of storage or wharfage."

*Eleventh.* That, in the opinion of the jury, Philip M. Kep-

ley had no authority to receive the buggies and barouche from the wharf-boat.

*Twelfth.* That neither Philip M. Kepley nor the plaintiff ever received the barouche from the appellees.

In response to interrogatories submitted to them, at the request of the appellees, the jury answered, in effect:

*First.* That Philip M. Kepley was authorized by Anderson, as the agent of the appellant, to receive the buggies and barouche in controversy and to store them in his livery stable.

*Second.* That Philip M. Kepley was, at the time of the arrival of the buggies and barouche, the keeper of a livery stable, and that his son Charles A. Kepley was his agent and general manager, and man of business in his absence.

*Third.* That Charles A. Kepley, as the agent and representative of Philip M. Kepley, went upon the wharf-boat and proceeded to put the buggies and barouche into a condition to be removed.

*Fourth.* That the barouche was lost overboard in consequence of the acts and negligence of Charles A. Kepley and his assistants.

*Fifth.* That there was no evidence as to whether Philip M. Kepley denied the authority of his son to receive the barouche after notice of its loss.

*Sixth.* That Philip M. Kepley made no objection to anything that was done by his son, or the men who worked with him.

*Seventh.* That the appellant resided in Cincinnati.

*Eighth.* That it was not shown in what business the appellant was engaged.

*Ninth.* That all the remaining buggies were taken to Kepley's livery stable after the barouche was lost.

*Tenth.* That the same persons who prepared the barouche for removal, also prepared the buggies for removal and removed them accordingly.

*Eleventh.* That the barouche was lost through the negli-gence of Charles A. Kepley.

*Twelfth.* That the loss of the barouche was occasioned by the acts of those representing Philip M. Kepley in the re-moval of the vehicles.

*Thirteenth.* That Anderson, as the agent of the appellant,. made no objection to anything that was done by Charles A. Kepley concerning either the buggies or the barouche.

*Fourteenth.* That they, the jury, did not know what was the immediate cause of the loss of the barouche.

Upon a return of the verdict the appellant moved for judg-ment in his favor upon the answers of the jury to the special interrogatories, upon the ground that some of those answers were inconsistent with the general verdict, but that motion being overruled, he then moved for a new trial, and that mo-tion was also denied. These rulings were succeeded by an entry of judgment for the appellees upon the general verdict.

It is claimed that as the jury found that Philip M. Kepley had authority only to receive the vehicles at, and to take them from the "landing," he necessarily had no authority to take charge of them at the wharf-boat, and that, consequently, Charles A. Kepley, who assumed to represent his father in taking control of the barouche at the wharf-boat, was noth-ing more than a volunteer and an intermeddler, for whom the appellant was in no manner responsible. We regard this argument as based upon a distinction which involves no sub-stantial difference. It is a matter within the common knowl-edge of all men that a wharf-boat, stationed and used at a particular wharf, is for all the purposes of commerce a part of the wharf itself, so long as it continues to be so stationed and used. It constitutes one of the landing facilities at the wharf, and the landing of a vessel along-side of and against such a wharf-boat is, in legal contemplation, a landing at the wharf to which it is attached.

The conclusion of the jury that, in their opinion, Philip

M. Kepley had no authority to take the buggies and barouche from the wharf-boat was, therefore, in view of their preceding and other findings of facts, more a conclusion of law than the finding of a fact, and hence was not substantially inconsistent with the general verdict. *Indianapolis, etc., R. W. Co.* v. *Bush*, 101 Ind. 582.

As a careful examination of all the answers to the special interrogatories will disclose, those seemingly inconsistent with the general verdict are antagonized by other answers which fully sustain the general verdict. Under such circumstances the answers, considered as they ought to be as a whole, can not be either accepted or treated as inconsistent with the general verdict. *Hereth* v. *Hereth*, 100 Ind. 35.

In one of its instructions to the jury the circuit court assumed to state the substance and effect of the testimony of some of the witnesses upon a given point involved at the trial. This, under our practice, was technically erroneous, but, taken in connection with all the other proceedings at the trial, we think no material injury was thereby inflicted upon the appellant. *Ball* v. *Cox*, 7 Ind. 453; *Barker* v. *State*, 48 Ind. 163; *Cunningham* v. *State, ex rel.*, 65 Ind. 377.

The general verdict appears to us to have been right upon the evidence. We, consequently, feel constrained to treat the error in question as only an abstract error, not affecting the substantial rights of the appellant.

Questions were reserved, and have been urged here, upon other instructions given by the circuit court, but, believing that what we have already said fairly disposes of the cause upon its merits, we deem it unnecessary to enter upon a review of any of the other instructions given at the trial.

The judgment is affirmed, with costs.

Filed Feb. 10, 1886.