No. 660.

## KEADLE, ADMINISTRATOR, *v.* SIDDENS.

MARRIED WOMAN.—*Promise to Pay the Debt of Another.—Ratification.*—The promise of a married woman, made in 1878, to pay the debt of another, was void, and could not be ratified after the death of her husband.

STATUTE OF FRAUDS.—*Promise of Widow to Pay Deceased Husband's Debt.*— A complaint by the holder of a note alleging that the defendant was the widow of the maker, who died the owner of the property, and alleging her verbal promise to. pay the note if the creditors would not take out letters of administration; that letters had not been taken out, and that the note remained unpaid, was insufficient on demurrer.

From the Benton Circuit Court.

*A. A. Rice* and *W. S. Potter*, for appellant.
*M. H. Walker* and *G. H. Gray*, for appellee.

BLACK, J.—John C. Keadle, as guardian of Edna E. Mills, brought his action in June, 1889, against the appellee, Matilda E. Siddens. The judgment was in favor of the appellee. After the rendition of the judgment, the ward died, and said Keadle having been appointed administrator of her estate, he appealed to the Supreme Court, from which the cause has been transferred to this court. See *Keadle v. Siddens*, 131 Ind. 597.

The complaint was in four paragraphs. At the expense of some repetition we will state the substance of each paragraph. In the first it was alleged that on the 25th of December, 1877, one Hugh C. Siddens, the husband of the appellee, executed his note to one Mollie Mills, who was the mother of said ward, for $108.80, due twelve months after date, with ten per cent. interest; that at that time said Hugh was the owner of three hundred and twenty acres of land in Benton county, well improved and in a high state of cultivation; that on the 21st of February, 1878, the appellee undertook and agreed with her said husband that if he would transfer to her by deed all his real estate, consisting of said three hundred and twenty acres of land, and deliver to her

all his personal property, consisting in part of certain chattels described, she would take the same and pay all his debts according to the tenor and terms thereof, and especially said note; that said Hugh and the appellee, to carry out said agreement, on said 21st day of February, 1878, conveyed by deed all the real estate owned by said Hugh to one John C. Pearson, a son-in-law of said Hugh and the appellee, and said Pearson the same day executed to the appellee a deed of conveyance for all the land so deeded to him, and said Hugh then and there turned over and delivered to the appellee all his personal property of every kind, and said agreement was then and there fully executed on the part of said Hugh; that on the 30th of April, 1878, said Hugh died totally insolvent, leaving no estate of any kind with which to pay his debts; that the appellee then and there received said property in pursuance of said agreement, and that she still held the same or the proceeds thereof; that she paid the debts of said Hugh, as per the agreement, or arranged to pay them, except said note; that she recognized and ratified her agreement to pay said note after the death of her said husband, and paid thereon the sum of $6.08, which payment was made March 13th, 1883, and then duly credited on said note; that the appellee was, and since the death of her said husband had remained, an unmarried woman; that there was due on said note a balance of $250, which remained unpaid; that the appellee refused to pay the same, though often requested so to do by the plaintiff in his capacity as guardian of said Edna E. Mills; that said Mollie Mills died intestate August 22d, 1882, leaving her surviving, as her only heir at law, said ward, who was the owner of said note; and that all the debts of the estate of said Mollie Mills had been paid in full.

In the second paragraph it was alleged that the appellee was the wife of said Hugh, who died intestate April 30th, 1878, leaving the appellee, his widow, and one of his heirs at law; that at the time of his death he was the owner of

real estate and personal property amounting to thousands of dollars, and was largely indebted to divers and sundry persons in large amounts, and especially to said Mollie Mills, mother of said ward, in the sum of $108.80, evidenced by his promissory note, described as in the first paragraph; that the appellee was desirous that letters of administration should not be taken on the estate of her said deceased husband, and so she agreed with the creditors of said estate, and especially with said Mollie Mills, that if she and they would forbear taking letters of administration on the estate of said Hugh, she would pay the claims of the creditors, and especially that of said Mollie Mills; that relying on the appellee's promise the creditors of said estate, and especially said Mollie Mills, declined to take, or to cause to be taken, letters of administration on said estate, and such letters never had been granted to any one; that pursuant to said agreement and promise of the appellee, she had paid, or arranged to pay, all the creditors of said estate, except said Mollie Mills; that on the 13th of March she paid on said claim $6.08, which then was duly credited upon said note; that she refused to pay the balance, though often requested by said guardian so to do; that there was due and owing on said claim the sum of $250, which remained wholly unpaid; that said Mollie Mills was the mother of said ward, and died intestate August 22d, 1882, leaving said ward as her sole surviving heir at law; and that the debts of her estate had been paid and satisfied in full.

In the third paragraph it was alleged, in substance, that the appellee was the wife of said Hugh, who died intestate April 30th, 1878, leaving the appellee his widow and one of his heirs at law; that at the time of his death he was the owner of real and personal property in said county worth thousands of dollars, and was indebted largely to divers and sundry persons, and especially to Mollie Mills, mother of said ward, in the sum of $108.80, evidenced by his promissory note, described as in the former paragraph; that letters of administration were never issued on the estate of said

Hugh ; that after the plaintiff was appointed guardian of his said ward, he called in his capacity as such guardian on the appellee, and notified her that he would take letters of administration on the estate of said Hugh, or that she must do so as next of kin, and that said note must be paid.; that the appellee then and there promised and agreed with him as such guardian, that, if he would forbear taking letters of administration on said estate, and would not require her to do so, she would pay said note within thirty days, or would at once arrange for its payment to his satisfaction ; that, fully relying on said promise and agreement, he had not taken letters of administration on said estate, or compelled the appellee to do so ; that three months and more had fully elapsed since said promise was made, and the appellee had not paid said claim, or arranged for its payment, and she refused to pay it or make any arrangement whereby it ever would be paid ; that she was talking of selling, and was trying to sell, all her real estate and personal property, and to remove to the State of Nebraska ; that said claim remained due and wholly unpaid ; that said Mollie Mills died intestate August 22d, 1882, and left surviving as her only heir at law, said ward, and the debts of her estate had been paid in full.

In the fourth paragraph it was alleged, in substance, that on the 25th of December, 1877, one Hugh C. Siddens executed his note to one Mollie Mills, described as in the other paragraphs ; that the appellee was then his wife, and so continued till his death, April 30th, 1878 ; that at the time of the execution of said note said Hugh was the owner of about three hundred and twenty acres of land in Benton county, well improved, etc., of the value of twenty thousand dollars and of two thousand dollars of personal property in said county, which real and personal property constituted his entire estate ; that he was then in debt to divers persons, and owed several thousand dollars ; that between the 25th of December, 1877, and the 21st of February, 1878, he became involved in a certain litigation with one Fenton, and fearing

that it would result in a judgment against him, and that his property would be sold to satisfy such judgment, he, on the 21st of February, 1878, transferred by deed and otherwise all his said property to the appellee, with the fraudulent intent of defeating such judgment; that the appellee took title to said property and received it with full knowledge of the fraudulent intent of her said husband, and participated with him in the same; that the creditors of said Hugh, some one or more of them, brought suit in the court below against said Hugh and the appellee, to set aside said conveyance of said land and transfer of personal property, and were about pushing said suit to final hearing in said court, when the appellee agreed with the creditors of said Hugh, and especially said Mollie Mills, that if she and they would abandon said suit, and would not bring any other suit of like character against her and said Hugh, but would allow her to remain in undisturbed possession and ownership of said property, she would fully pay and satisfy all debts and obligations of said Hugh evidenced by note and mortgage or by note only and by account as well; that fully relying on said promise and agreement of the appellee, said Mollie Mills permitted the statute of limitations to fully bar her right to sue to set aside said deed and to annul said transfer; that said Mollie Mills died intestate August 22d, 1882, and left surviving as her sole heir at law said ward, who was the owner of said note, the debts of the estate of said Mollie Mills having long since been paid, which note remained due and unpaid, except as to the sum of $6.08, paid thereon by the appellee March 13th, 1883, pursuant to said agreement; and that the appellee, in pursuance of said agreement, had paid and satisfied all the claims of the creditors, and refused to pay and satisfy the claim of said ward.

Of the agreement alleged in the first paragraph of the complaint, made between the appellee and her husband, for the payment by her of his debts, in 1878, it is sufficient to say that her executory contract was absolutely void, and be-

ing so, it could not be ratified by her after the death of her husband. She could then be bound only by a new contract, based upon a new and sufficient consideration. *O'Daily* v. *Morris*, 31 Ind. 111; *Williams* v. *Wilbur*, 67 Ind. 42; *Wooden* v. *Wampler*, 69 Ind. 88; *Maher* v. *Martin*, 43 Ind. 314; *Putnam* v. *Tennyson*, 50 Ind. 456; *Thomas* v. *Passage*, 54 Ind. 106; *Long* v. *Brown*, 66 Ind. 160.

The promises of the appellee alleged in the second and third paragraphs were promises to pay the debt of another. It does not appear that she promised to pay with property of the debtor, or the proceeds of such property, placed in her hands for that purpose. If it would make any difference, it does not appear that she had in her possession any property of the debtor, or what was the amount of her share of the estate, or that it had not been exhausted in payment of the other large amounts which the intestate owed. It is not indicated that the promisee surrendered or lost any lien. It is not shown that, as the effect of her promise, the original debt was extinguished. It still subsisted as a claim against the estate of her deceased husband, for which, upon her failure to pay, an administrator might still be appointed. The promises of the appellee shown, by the second and third paragraphs, were within the statute of frauds.

As to the promise of the appellee, declared on in the fourth paragraph, it appears to have been made when she was a married woman, and therefore it was void, and her failure to perform it did not raise a personal liability.

Each paragraph of the complaint was insufficient on demurrer.

The judgment is affirmed.

Filed May 25, 1892.