Sponhaur *v.* Malloy.

## Sponhaur *v.* Malloy.

[No. 2,483. Filed December 15, 1898.]

BILLS AND NOTES.—*Renewal Note.—By Whom Executed.*— A note may be a renewal note, though not signed by the same parties who executed the note thus taken up. *p. 292.*

SAME. — *Renewal Note.— Consideration. —Principal and Surety. —* Where the principal of a note dies insolvent, and, at the maturity of the note, his widow joins with the surety in the renewal thereof, the widow's liability will be only that of a surety, since her execution of the renewal note is without consideration. *pp. 293-299.*

SAME.—*Note Executed by a Widow in Renewal of Husband's Debt.— Interrogatories to Jury.—Suretyship.*—In an action by plaintiff to be reimbursed for money alleged to have been paid for the use and benefit of defendant, the answers to certain interrogatories returned with a general verdict showed that defendant's husband died leaving an estate worth less than $500 which was set off to her; that at his death he owed a certain bank $600, for which debt plaintiff was surety; that by request of plaintiff the defendant joined with him in a new note to take the place of the husband's note; that defendant did not receive from the bank for her own separate use any part of the $600 represented by the note; that the only consideration for the new note was the extension of time gained by plaintiff;

that at the time the new note was presented, the bank noted on its
books a deposit to credit for $600, and required her to draw a check
on the same; that this form was followed in observance of a cus-
tom, and was done solely for the convenience of the bank in keep-
ing its accounts. *Held,* that there was no irreconcilable conflict
between the facts found and a general verdict for the defendant.
*pp. 299-301.*

APPEAL AND ERROR.—*Instructions.*—A judgment will not be reversed
because instructions to the jury were unduly favorable to appellee,
where the facts found showed that the correct conclusion was
reached. *p. 301.*

From the Allen Superior Court. *Affirmed.*

*W. P. Breen* and *John Morris, Jr.,* for appellant.

*W. Leonard* and *E. Leonard,* for appellee.

COMSTOCK, J.—The complaint in this action alleges
that on the 11th day of February, 1892, appellee and
appellant executed a note for $600 to the Old Na-
tional Bank of Ft. Wayne; that he signed the same as
surety, and received no part of the consideration
thereof; that appellee failed to pay said note when
due; that he paid the same, and that appellee has
failed to repay to him any part of the sum so paid by
him.

Appellee's answer is in four paragraphs. The first
paragraph is the general denial.   In the third para-
graph she says that it was she who signed the note
mentioned in the complaint as surety.   In the fourth
paragraph she says that she is the widow of William
Malloy, who died intestate on the 17th day of October,
1891, leaving as his only heirs at law this defendant
and one child about three years of age; that after the
death of her said husband it was discovered that his
estate was wholly insolvent, and worth less than $500,
and, upon the application of this defendant, all of the
property of his said estate was duly inventoried and
appraised, and, by and under the order of the circuit
court of Allen county, was on the 16th day of No-

vember, 1891, set off and given to this defendant, as the widow of said William Malloy, free from all debts of her said husband, and that she have possession of all of said property, all of which was well known to this plaintiff. Appellee further says that, some time prior to the death of her said husband, he, the said William Malloy, borrowed from the Old National Bank of Ft. Wayne, Indiana, the sum of $1,000, for which he gave his promissory note, this plaintiff executing the same as his surety; that afterward said Malloy renewed said loan, from time to time, up to the time of his death, this plaintiff signing each of said renewal notes as his surety, and, at the time of his (said Malloy's) death, there was yet owing said bank from him the sum of $600, no part of which had been paid, which sum was secured by a promissory note given to said bank and executed by said Malloy as principal and this plaintiff as surety; that after the death of said William Malloy and when said last mentioned note became due, this defendant, at the request of the plaintiff herein, together with plaintiff, executed a promissory note to said bank in renewal of the note so signed by said William Malloy and this plaintiff, and, upon said note so executed by said plaintiff and defendant falling due again, this defendant, at the request of the plaintiff herein, joined with plaintiff in executing a second note, being the note set out in plaintiff's complaint, to said bank in renewal of said former note, all these last mentioned notes being for the same amount, to wit, $600, and when said last mentioned note, being the one set out in plaintiff's complaint, fell due, it was taken up and paid by this plaintiff. This defendant further says that she signed said notes as surety for this plaintiff, and not otherwise, and received no part of the consideration there-

of. In her amended second paragraph of answer, appellee repeats the allegations of her fourth paragraph, but says, in addition, that she signed these notes with appellant, at his request, and upon his representation that he could thus gain time to pay her husband's note; that the bank was well aware of these facts; and that, therefore, so far as she is concerned, her notes were without consideration.

Appellant filed a reply in two paragraphs to the amended second, third, and fourth paragraphs of answer. The first paragraph is the general denial. In the second paragraph it is averred that "on the 9th day of November, 1891, the plaintiff and the defendant executed to the Old National Bank of Ft. Wayne, Indiana, their promissory note for the sum of $600, identical in all respects with the note set forth as Exhibit A to plaintiff's complaint, except as to the date; that on said day said last mentioned note was taken to said Old National Bank by the defendant, and by her delivered to said bank, who paid to the defendant thereon, as a loan to her, the sum of $600, by depositing to her credit in said bank said sum of $600, less the interest thereon for ninety-three days, amounting to the sum of $12.40; that at said time said Old National Bank held a note dated the 7th day of September, 1891, executed to said bank by William Malloy, the husband of the defendant, and this plaintiff, for the sum of $600, with eight per cent. interest until paid, and due ninety days after date, the form of said note being in all respects like the note set forth in plaintiff's complaint, except as to date thereof and the parties executing the same; that the interest on said note had been paid to maturity; that plaintiff had executed said note simply as surety for the said William Malloy, the whole consideration thereof having been paid to the said William Malloy, and no part thereof being

received by this plaintiff; that said William Malloy died on the 17th day of October, 1891, and the defendant, his widow, being desirous of paying her husband's said debt to said bank, and feeling under moral obligation so to do, on said 19th day of November, 1891, paid to said bank $12.40 cash, and executed and delivered to said bank her check for the sum of $587.60 in payment of said note executed to said bank by the said William Malloy, and this plaintiff and her said check was accepted by said bank in payment of said note, and said note was delivered by said bank to said defendant as paid.    And the plaintiff further avers that, at the maturity of said note executed to said Old National Bank by the defendant and this plaintiff for the sum of $600, the defendant executed to said bank her check for the sum of $600 in payment thereof, and said check was received and accepted by said bank in payment of said note; that on said 11th day of February, 1892, defendant and the plaintiff executed to said Old National Bank the note set forth in plaintiff's complaint; that the defendant delivered said note to said bank, and received from said bank the consideration therefor, to wit, the sum of $600, less the interest thereon for ninety-three days, to wit, the sum of $12.40, which interest the defendant paid on said note in advance, and the balance of said sum of $600, to wit, $587.60, was deposited to the credit of the defendant in said Old National Bank of Ft. Wayne, Indiana, and no part of the same was deposited to the credit of the plaintiff nor received by him; that plaintiff intended to and did execute all the notes herein mentioned as surety, and not otherwise; that the defendant paid said note of her said husband on account of the moral obligation she felt she was under to pay and discharge the just and proper obligations of her husband."

A trial of the case resulted in a general verdict for appellee. Appellant's motions for judgment on the answers of the jury to interrogatories and for a new trial were overruled and exceptions reserved. Appellant assigns as errors the action of the court (1) in overruling the demurrer to the third paragraph of appellee's answer; (2) in overruling the demurrer to the fourth paragraph of answer; (3) in overruling the demurrer to the amended second paragraph of appellee's answer; (4) in overruling appellant's motion for a new trial; (5) in overruling appellant's motion for judgment in his favor for $601.20, with six per cent. interest thereon from the 23rd of May, 1892, upon the answers to the jury to the special interrogatories, notwithstanding the general verdict.

Appellant's learned counsel first discuss the second assignment, the overruling of the demurrer to the fourth paragraph of answer. It is averred in said paragraph that William Malloy, husband of appellee, in his life executed a note for $600 to the Old National Bank; that appellant executed this note as surety for Malloy; that, after Malloy's death, appellee and appellant executed a note for $600 to said bank in renewal of said William Malloy's note, and that this second note was renewed by the note mentioned in the complaint; that appellee was surety on the notes so executed by her. Counsel contend that a person cannot, by giving his own note, renew the note of another person, because "to renew is to make new again," "to re-establish," "to restore to vigor," etc., and that the note of William Malloy could not have been made new or re-established by the note of appellee and appellant. This objection is based on phraseology rather than substance. Anderson's Dictionary of Law defines "renewal" as "the substitution of a new right or obligation for another of the

same nature." The same author says: "It is not a word of art; it has no legal or technical signification." Bouvier defines it to be "a change of something old for something new." Within these definitions, the word is not improperly used.

Counsel further charges as superfluous the allegation in said answer that appellee's husband died, leaving appellee as his widow with an estate worth less than $500, all of which was set off to her under the statute, and that the note of her husband is not shown to have been worthless. The averments show as to the appellant, the estate of the maker being insolvent, that the note was worthless. This paragraph is manifestly intended to set out the facts attending and reasons for the signing of the notes from appellee's standpoint. Its evident purpose was to show that, after her husband's death, appellant was primarily liable, because William Malloy did not leave an estate sufficient to pay the same or any part of it. When appellant requested appellee to join with him in a new note, to be substituted for that debt, he asked her to secure, not her debt, but his own. Appellee signed the note to substitute for the one upon which he was liable. She did this at the request of appellant, who at the time he made the request knew, as is alleged, that the estate of his principal was worthless, and that he alone was liable therefor. As between these parties, appellant alone secured the benefit of the consideration, that of time within which to pay his own debt, Such new note did not secure appellee's debt or one which she was bound to pay. The averments make appellee surety.

It is true, as claimed by appellant's counsel, if appellee desired to pay her husband's note, she "had the right to do so; and if in doing so she had borrowed of the bank $600, and gave her note therefor to the bank

signed by appellant, he would only be liable in the capacity in which he signed it. The disposition of the proceeds after the contract was made would not alter the contract between the parties made at the time, and, if the appellant signed the note as surety for appellee, the fact the husband's estate was worth less than $600, and that she used the money obtained on the note to pay her husband's debt, could not affect appellant's relation to the note." In this connection appellant's counsel cite *Young* v. *McFadden*, 125 Ind. 254; *Rinn* v. *Rhodes*, 93 Ind. 389. The first case cited supports the position of appellant's counsel that the relation to the note and the capacity in which they contracted depend upon the contract, and not solely upon the signatures to the instrument; that the mere fact that a wife joined her husband in executing a promissory note does not imply that she was not a principal, for, in a note signed by husband and wife, both may be principals,—indeed, the husband may be the surety of the wife. It is pertinent to say here that the court approved an instruction that "while it was competent for Mrs. Young to contract on her own behalf, or jointly with her husband, to pay Mr. McFadden an attorney's fee for defending her husband, it was not competent for her to contract as surety to pay the debt of her husband." But we are unable to see that the averments of the answer showed that appellee assumed the payment of her husband's debts. In *Rinn* v. *Rhodes*, *supra*, the court held that the assumption of a married woman of the debt of her husband, for which she was surety, was a valuable consideration for the sale to her of personal property by her husband. It is not in point. In *Crumrine* v. *Estate of Crumrine*, 14 Ind. App. 641, a note for $500 signed by Jacob Crumrine and Susannah Crumrine, husband and wife, was filed against

a decedent's estate. Upon exemption of appellant (claimant) under the statute, it was decided that the $500 note was given in renewal of one for $400 signed by Jacob Crumrine. The evidence showing indebtedness upon the part of the maker, the court held that the jury were justified in finding that as to Susannah Crumrine the note was executed. without consideration and merely as surety. The trial court did not err in overruling the demurrer to the fourth para graph of answer.

Counsel next discuss the third specification in the assignment of error, the overruling of the demurrer to the amended second paragraph of answer. The appellant's counsel point out as defects in the answer that it contains no averment that there was any fraud practiced upon appellee, nor any reason suggested why she did not know the legal consequences of her acts; again denying that her note could have been a renewal of her husband's, and asserting that, if a consideration passed from the bank to her or appellant, both are liable on the note to the bank, citing *Wheeler* v. *Barr*, 7 Ind. App. 381. It is apparent that this paragraph does not proceed upon the theory of fraud. It counts only upon a failure of consideration to bind appellee. In *Wheeler* v. *Barr, supra,* Owendorff, a surety on the note in suit, answered that "he executed the note sued on without any consideration whatever to him moving." The court held the answer insufficient, because the issue tendered was personal (citing *Anderson* v. *Meeker*, 31 Ind. 245; *Bingham* v. *Kimball*, 33 Ind. 184; *Meyer* v. *Brand*, 102 Ind. 301); adding that "whether there was a consideration moving to the appellee Owendorff or not is immaterial. If there was a sufficient consideration for the note, whether the same moved to Owendorff or the principal maker, or any other person, it is all

the law requires." If the answer shows a failure of consideration, and it should be admitted that appellant was surety for appellee, and he paid the debt without request from appellant, and the demurrer so admits, then appellant cannot recover the money voluntarily paid by him, for the reason that a surety cannot pay a debt for which his principal is not liable, and then sue for re-imbursement from that principal. 1 Brandt on Sur. and Guar. (2d ed.), section 225, p. 340; *Opp* v. *Ward,* 125 Ind. 241; *Hollinsbee* v. *Ritchey,* 49 Ind. 261.

The facts pleaded show that appellee's husband borrowed of the bank $600. Before the debt matured, he died intestate, leaving appellee, his widow, with an insolvent estate. After his death she executed her note for that debt. That she is not bound by that obligation has been settled by numerous decisions. The case of *Ferrell* v. *Scott,* 2 Speers' Law 344, 42 Am. Dec. 371, is one where a widow with an insolvent estate executed her note for the debt of her deceased husband. On page 374 the court says: "It cannot be pretended that the defendant derived any benefit from her incurring a liability to pay $300, from which she was entirely exempt before she gave her note. It was not urged that she gave her note to relieve herself from any legal obligation. Place it in the most favorable point of view, it was a voluntary undertaking on her part to pay a debt for which she was not liable, and for the collection of which the plaintiff had no possible legal remedy. And the question recurs, did the plaintiff give up any right that was worth anything, or suffer any loss by discharging a demand against a deceased pauper? It seems to me it was no more than discharging a debt against a fictitious person, against whom it might have been charged, by way of exercise, in a book kept for the purpose of learning the art of

bookkeeping. The demand was utterly unavailable, and not worth the ink and paper employed in perpetuating it. The defendant's undertaking must therefore be regarded as voluntary, and without benefit, so far as she was concerned, and one which subjected the plaintiff to no possible loss or detriment; and being thus without consideration, must be regarded as *nudum pactum* and void." In *Williams* v. *Nichols*, 76 Mass. 83, the same question was passed upon, the court saying: "As regards the legal question now before us, we must take the case to have been that of a widow who, at the solicitation of a creditor of her deceased husband, gives to him a promissory note promising to pay him the amount of his debt due from her husband, in a case where there are no assets to be administered and where no possible benefit can result to the party giving such note, and no possible damage is suffered by the payee. In the case supposed, the widow would derive no benefit from the discharge of a debt due by her deceased husband. Nor do we perceive how any possible damage to such creditor could arise from having given a receipt to the widow purporting to discharge such demand. The giving of the receipt would not, under the circumstances here offered to be shown, establish a legal consideration for the note. In the opinion of the court, upon the facts offered, if shown to exist, the case would be that of a voluntary promise, not founded on any legal consideration." *Hetherington* v. *Hixon*, 46 Ala. 297, a case analogous to the one before us, was one in which Mrs. Hetherington, as surety with her husband, executed a note for one executed by him. After his death leaving an insolvent estate, she executed to Mrs. Hixon a note for $1,000, the consideration of which was the note signed by her and her husband, and another for

$200, signed by her husband alone. On being pressed by the payee, Mrs. Hixon, she substituted for the last obligation the note and mortgage in suit, out of which the note for $200 was omitted. The court said: "Mrs. Hetherington entered into this contract about five years after her husband's estate had been declared insolvent, and at the solicitation of complainant, on her supposed existing liability. The insolvency of the husband's estate was a positive, though not conclusive, evidence that she did not mean to purchase his notes. *  *  * While a note upon an insolvent person or estate may be a sufficient consideration for a promise to pay money, yet where it was obtained, not as an inducement to the promise, but as a substitution of papers, and at the request of the promisee, the mere fact of loss subsequently sustained on account of a failure to file it as a claim against the estate cannot create a consideration, although the non-claim was in consequence of the creditor's belief that he had otherwise secured its payment. *  * . * As a note given for a pre-existing debt is not a payment or extinguishment of such debt, unless it was so agreed between the parties, and the taking of such a note does not even raise the presumption of payment or extinguishment; so a note given for the debt of another is not a purchase of the debt, unless it was so agreed. *  *  * The complainants cannot recover unless they can relieve their case from the condition of an obligation to pay the debt of another without an original, concurrent consideration, agreed to by the parties at the time." The case of *Paxson* v. *Nields*, 137 Pa. St. 385, 20 Atl. 1016, is also in point. In that case the husband died, leaving appellee, his widow, with an estate which paid to his creditors but five per cent. of their claims. They prevailed upon the widow to execute to them a note

for the entire indebtedness. The note was renewed from time to time, and payments made thereon. Appellants brought suit to recover the balance on the widow's note, and the supreme court of Pennsylvania, in passing upon the question, said: "It is clear that the appellants lost and the appellee acquired nothing by this transaction. It was a one-sided affair and exclusively for the benefit of the former. But, as a promise to pay the pre-existing debt of another person to his creditor requires a new consideration to support it, they can take nothing further by it. What they have received by virtue of it, they may retain, but the law would not help them more." *French* v. *French*, 84 Ia. 655, 59 N. W. 21; *Stockton* v. *Reed*, 2 Mo. App. Rep. 1176; *Kircher* v. *Sprenger*, 4 Pa. Dist. Rep. 144; *Weir* v. *Sanders*, 124 Ind. 391; and, also, *Keadle* v. *Siddens*, 5 Ind. App. 8. The demurrer to the .amended second paragraph of answer was properly overruled.

The action of the court in overruling appellant's motion for judgment in his favor for $601.20, with interest from May 23, 1892, upon the answers of the jury to the interrogatories, is challenged by the fifth, sixth and seventh specifications in the assignment of errors. The verdict and answers to interrogatories were returned, and judgment rendered, under the acts of 1897, p. 128. This verdict is not a special verdict. Neither party was bound to propound interrogatories with a view of eliciting all the facts relied upon. In their answers to interrogatories the jury found that on the 11th day of February, 1892, appellee and appellant signed a note for $600, payable to the Old National Bank, and due in ninety days; that, after said note was thus signed, appellee took said note to, and delivered it to, said bank; that the bank thereupon paid to her $600 by deducting $12 as interest on

the note for ninety-three days, and by depositing $587.68 to her credit in the bank; that appellee drew her check against said deposit and that the same was paid; that appellant owned no part of the money so loaned by said bank to appellee; that said bank entered said note on its discount book as the note of appellee; that said note became due on the 14th day of May, 1892, and on the 23rd day of May, 1892, appellant gave to the bank $601.20, in full payment of said note. These are the facts found pointed out by appellant; but it also appears from the answers to the interrogatories that the note set out in appellant's complaint was a renewal of the former note, dated November 12, 1891, representing the same debt.    The same defenses existed to the one as to the other.    The answers of the jury applicable to one note were applicable to the other.    *Reeder* v. *Nay,* 95 Ind. 165; *Morrison* v. *Kendall,* 6 Ind. App. 216.    Appellant, however, is not suing upon a note, but is asking to be reimbursed for money paid for appellee's use and benefit.    Interrogatories will not control a general verdict unless they irreconcilably conflict with it.    In the *City of Fort Wayne* v. *Patterson,* 3 Ind. App. 36, the rule is thus stated: "If, taking all the special findings together and adding to them any other fact that might have been proved under the issues, an irreconcilable conflict with the general verdict can be avoided, the answers to interrogatories will not be allowed to control;" citing *Cook* v. *Howe,* 77 Ind. 442; *Davis* v. *Reamer,* 105 Ind. 318; *Pennsylvania Co.* v. *Smith,* 98 Ind. 42.    In substance the jury found, in answer to interrogatories, that appellee is the widow of William Malloy, who died intestate, leaving an estate worth less than $500, which was set off to her; that at his death he owed the bank $600, for which debt appellant was surety; that, by request of appellant, appellee joined ·with

Sponhaur v. Malloy.

him in a new note to take the place of the husband's note, and that the only purpose she had in doing so was to aid him in securing more time within which to pay it; that appellee did not receive from the bank for the note she and appellant executed any part of said $600 for her own separate use; that the note set out in the complaint was a renewal of the note first made by these parties for this debt, and that the only consideration for these notes moving to any one was the extension of time thereby gained, which appellant received; that, at the time the new note was presented, the bank noted on its books a deposit to credit for $600, and required her to draw a check to "demand" on the same; that this form was followed, in observance of a custom of the bank in case of a renewal of notes or substitution of new for other notes, and was done solely for the convenience of the bank in keeping its own accounts straight. There is no irreconcilable conflict in the facts found and the general verdict, and the court did not err in overruling appellant's motion for judgment.

The fourth specification of the assignment of errors, the overruling of appellant's motion for a new trial, is the last error discussed. The reasons for a new trial numbered from one to six are not discussed, and, under the rule, are therefore waived. The reasons numbered from six to twenty-six, inclusive, relate to instructions given by the court at the request of appellee. The instructions contain some repetitions not to be commended, but, upon the facts found, appellee was not liable, and therefore, even if the instructions complained of were clearly favorable to her, we would not be justified in disturbing the judgment. Judgment affirmed.