

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
~~ATTORNEY GENERAL~~
ATTORNEY GENERAL

Hon. Sidney Latham
Secretary of State
Austin, Texas

Dear Sir:

Opinion No. 0-5988
Re: Under the facts submitted, is the
"renewal" note in question taxable
for franchise tax purposes?

You submit for the opinion of this department the
question contained in your letter of April 24, 1944, reading
as follows:

"A franchise tax report has been filed with this
office by a foreign corporation which shows an outstanding
indebtedness of $16,500,000.00 representing the unpaid
balance upon an original debt of $19,000,000.00.

"Under column (1) of Schedule E of the report under
the caption 'Original Dates of Inception' the date January 1,
1935, is shown. Under column (1a) of Schedule E under the
caption 'Dates of last Renewal, Extension or Refinance' the
date December 31, 1943, is shown. It was shown by the tax-
payer in a footnote to Schedule E that the note was 'payable
90 days after demand.

"Based solely upon the above information shown on the
tax return, this office considered the unpaid balance of
$16,500,000.00 as a taxable item under Article 7084, R. C. S.
1925 as amended, as being an indebtedness evidenced by a note
maturing in less than one year which had been renewed since
its date of inception, and served notice on the taxpayer
that an additional sum of $977.00 was due by reason of such
note.

"Evidence has now been submitted to this office which
the taxpayer offers to reduce to affidavit form to be executed
by an authorized representative of the company having knowledge
of all the facts, which shows that an original note was ex-
ecuted on January 1, 1935, in the sum of $19,000,000.00.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

This advance of money was made from the parent company of which the taxpayer is a wholly owned subsidiary. On December 31, 1943, another note was executed covering $16,500,000.00, representing the unpaid balance of the original obligation. Copies of the two notes are enclosed herewith, omitting only the names of the maker and payee.

"It is to be noted that the only difference in the language of the two notes is that the phrase 'provisions for insurance and for contingent liabilities' is added in the note of December 31, 1943, and the sentence appearing in the original note reading 'In case of any dispute or uncertainty in this respect, the determination made for Federal income tax purposes shall govern' is deleted. A slight change was made in the last paragraph which appears to be of no consequence in this inquiry.

"The taxpayer represents that the note of December 31, 1943, was executed not as a renewal of the original indebtedness, but for the sole and only purpose of clarifying the method of computing net income for purposes of interest payments on the note and to compute the interest entirely by a method agreed upon between the parties rather than according to the regulations governing Federal income taxes. It is further represented that the interest based upon net profits had always been computed under the original note in the manner now provided under the note of December 31, 1943, and that no dispute had ever arisen between the maker and payee of the note such as would necessitate resorting to Federal income tax regulations. The taxpayer further contends that it has received no financial gain or benefit by reason of the execution of the latter note and that no demand for payment of the original note had been made prior to the execution of the latter note, and that such demand has not since been made at any time.

"In the light of the above facts, will you please advise this Department upon the following inquiry:

"Is the note dated December 31, 1943, a renewal of the note dated January 1, 1935, as the term 'renewal' is used in Subdivision (a) of Article 7084 so as to render the note taxable for franchise tax purposes?"

Under the circumstances disclosed by your letter we are to determine if the note of December 31, 1943, in the sum of $16,500,000.00, representing the unpaid balance of the note of

January 1, 1935, for $19,000,000.00, is a renewal of said note
as that term is used in Subsection a of Article 7084, R. C. S..
If it is, then said renewal note must be included by the cor-
poration in determining the franchise tax due by it. It is
helpful if we have the statute before us, and especially that
portion of it which we have underscored. It reads as follows:

"(a) Except as herein provided, every domestic and
foreign corporation heretofore or hereafter chartered or
authorized to do business in Texas, or doing business in
Texas, shall, on or before May 1st of each year, pay in
advance to the Secretary of State a franchise tax for the
year following, based upon that proportion of the outstand-
ing capital stock, surplus and undivided profits, plus the
amount of outstanding bonds, notes and debentures, (outstand-
ing bonds, notes, and debentures shall include all written
evidences of indebtedness which bear a maturity date of one
(1) year or more from date of issue and all such instruments
which bear a maturity date of less than one (1) year from
date of issue but which represent indebtedness which has
remained outstanding for a period of one (1) year or more
from date of inception, but which have been renewed or
extended, or refinanced by the issuance of other evidences
of the indebtedness, whether to the same or other parties
and it is further provided that this term shall not include
instruments which have previously been classified as surplus)
. . ." (Emphasis ours)

That the note for $19,000,000.00, dated January 1, 1935,
has remained outstanding for a period of more than one year is
patent on the face of it, hence this need not give us further
concern. We, therefore, turn our attention to the question of
whether or not the note for $16,500,000.00, representing the
balance due on the $19,000,000.00 note, as of December 31, 1943,
is a renewal of this unpaid balance. What is a renewal of a note?
The Legislature has not elected in its use of the term "renewal"
to define its meaning as used in the act; hence the commonly
accepted definition in a commercial sense is the one that should
be adopted. The Supreme Court of South Dakota, in the case of
Wilcox v. McCain Land and Live Stock Co., et al., 159 N. W. 49,
defines it thus: "A renewal of a note is the giving of a new note
in the place of the former one."

In Clifford v. United States Fidelity Guaranty Co.,
(Supreme Court of Oklahoma) 249 P. 938, it is said:

"The courts have also held that the word 'renew' or 'renewal,' as applied to or used in notes, certificates of deposit, and bills of exchange implies, and for that matter requires the execution of a new instrument; in other words, the creation of a new contract. Parchen v. Chessman, 53 Mont. 430, 164 P. 531; Sponhaur v. Malloy, 21 Ind. App. 287, 52 N. E. 245; State v. Kiefer, 183 Iowa, 319,163 N. W. 698; Wilcox v. McCain Land & Live Stock Co., 37 S. D. 511, 159 N. W. 49."

A definition perhaps more comprehensive than the two noted above is found in the case of Grace & Co. v. Strickland, (Supreme Court of North Carolina) 35 A. L. R. 1296, in the following language:

". . . As applied to negotiable instruments the word 'renewal' or 'renewed' signifies more than the substitution of one obligation for another. It means the substitution in place of one engagement of a new obligation on the same terms and conditions; that is, the re-establishment of a particular contract for another period of time."(citing cases)

We find the following language in King v. Edell, et al., 26 S. E. (2d) 365 (Court of Civil Appeals of Georgia):

— ". . . The term "renewal," as applied to a note, means the reestablishment of the particular contract for another period of time. There may be a change of parties or an increase of security, but there is no renewal unless the obligation is the same. A renewal, as distinguished from a mere extension, is usually evidenced by a new note or other instrument.' 8 C. J. p. 425 ()626. See also 10 C.J.S., Bills and Notes, ()160.. . ."

From the foregoing we are led to the conclusion that the $16,500,000.00 note dated December 31, 1943, has all the legal characteristics of a renewal of the unpaid balance of the original note for $19,000,000.00, dated Jan. 1, 1935, and falls clearly in the following part of the statute:

". . . and all such instruments which bear a maturity date of less than one (1) year from date of issue but which represent indebtedness which has remained outstanding for a period of one (1) year or more from date of inception, but which have been renewed or extended, or refinanced by the issuance of other evidences of the indebtedness, . . ."

and is one of the taxable elements upon which the franchise tax of the corporation is to be calculated, and you are accordingly so advised.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

L. P. Lollar
Assistant

LPL:AMM