Ga.) MARCH TERM, 1905. 489

## LOWRY NATIONAL BANK v. FICKETT et al.

1. Books of a corporation which has been adjudicated a bankrupt under the bankrupt act of 1898, produced in court by the trustee, and appearing upon their face to be the books of such corporation and to be free from suspicion of fraud, are prima facie identified as the books of the corporation, and are admissible in evidence in favor of one seeking to establish a right against it.
2. The plaintiff, having elected in its petition to treat the transaction on account of which it sought to hold the defendants liable as a renewal of existing indebtedness to the plaintiff, can not recover if it appears that such transaction was not in law a renewal.
3. The term "renewal," as applied to promissory notes, means "the re-establishment of the particular contract for another period of time."
4. An undertaking to be liable only in the event that another person fails to pay can not in law be a renewal of an obligation to pay absolutely and at all events, without reference to the liability of another.
5. Whether the case be considered in the light of the evidence admitted, or in the light of that admitted and rejected, the allegations of the petition were not supported, and there was no error in granting a nonsuit.

Argued February 2, — Decided March 25, 1905.

Action on contract. Before Judge Reid. City court of Atlanta. April 5, 1904.

The Lowry National Bank sued Fickett and others as guarantors, to recover $1,333.34 principal, besides interest. The contract of guaranty declared on recited that the defendants were stockholders in the R. N. Fickett Paper Company, a corporation; that that company was indebted to the plaintiff in a large sum, evidenced by its promissory notes; that the company might desire to increase its indebtedness; and that the plaintiff was unwilling to extend further credit, unless the defendants would guarantee the payment of the present indebtedness and the repayment of all advances made thereafter. The contract then provided that the defendants would "guarantee the said bank the repayment in full in accordance with the tenor and evidence of the notes now in existence or any renewal of same and notes or evidences of indebtedness as may be taken to represent any and all advances which the said Lowry National Bank shall hereafter make to the said R. N. Fickett Paper Company from time to time as long as this agreement shall be in force, including all renewals or extensions which may be made for any advance so made," and that the bank might "grant any extension for all renewals for advances"

without notice to or the consent of the defendants. The corporate name of the paper company was afterwards changed to the Georgia Paper Company. After the execution of this contract, the bank discounted a non-negotiable note, payable to the Georgia Paper Company, for $1,333.34 principal. This note was indorsed: " Georgia Paper Company, per Jno. B. Richards Jr." The petition alleged that this note and two others of like amount were " taken in renewal of the four thousand dollars ($4,000.00) balance of indebtedness due by said Paper Company to petitioner." There was evidence from which it might have been inferred either that the note was taken in settlement of an existing indebtedness or possibly that the amount of the note was paid to the company as an advance ; and one of the officers of the bank testified that the note was given to it " in renewal " of indebtedness then existing. The court granted a nonsuit, and the plaintiff excepted, assigning error upon the order granting the nonsuit, upon the rejection of the note above referred to, and upon the rejection of certain books which it was claimed were the books of the Georgia Paper Company, in the custody of the trustee in bankruptcy for that corporation.

*Anderson & Anderson,* for plaintiff.   *Candler & Thomson, W. D. Thomson, Felder & Rountree,* and *S. C. Tapp,* for defendants.

COBB, J.   1.   As a general rule, the books of a corporation can not be received to establish a right in the corporation against third persons, but they may be used for the purpose of showing the regularity and legality of corporate proceedings, and thereby establish a right against one of the members, and of course may be used to establish a right against the corporation itself.   *Hall* v. *Carey,* 5 *Ga.* 243 ; 5 Enc. Ev. 609, 610.   Such books being required by law to be kept, and the entries therein being of public interest, and being made under the sanction of a legal duty, are recognized by law as evidence in certain cases. Their admission in evidence is, however, dependent upon their being properly identified as the books of the corporation.   They may be so identified in various ways.   The books do not prove themselves, but when they are produced by an officer of the corporation, who is shown to be the proper custodian of the books, and who testifies that they are the original books, and the court by inspection becomes

satisfied that there is nothing in the books to raise a suspicion of fraud, the identification is sufficient to admit them in evidence. Mere proof that the entries therein are in the handwriting of an officer of the corporation does not seem to be sufficient identification, unless it appears that it was the duty of such officer to make the entries. If the books are shown to come from the proper custody, that is, the custody of the officer whose duty it is to keep and preserve them, or the custody of any person upon whom such duty is imposed even temporarily by the corporation, and the books appear to be the corporate books and free from suspicion of fraud, this is sufficient to show prima facie that they are the books of the corporation. In each case the question to be determined is whether the books are the books of the corporation. Direct proof by the official custodian to this effect, or proof that they came from the proper custody, and an inspection by the judge sufficient to satisfy him that they appear to be corporate books and free from suspicion of fraud, is all that could be reasonably required to make a prima facie case of identification. See *Merchants Bank* v. *Rawles*, 7 *Ga.* 198; *City of Columbus* v. *Ogletree*, 102 *Ga.* 294 (7); 3 Enc. Ev. 610; 9 Am & Eng. Enc. L. (2d ed.) 897. When a corporation has been adjudicated a bankrupt, and a trustee appointed under the provisions of the bankrupt law, he is not only entitled to the possession of the books of the corporation, but it is his duty to take them into his possession. The trustee is therefore the lawful and proper custodian of the corporate books of a bankrupt corporation; and when such trustee produces in court the books which came into his possession as the books of the corporation, the books come from the proper custody; and if they appear from inspection to be the books of such corporation and to be free from suspicion of fraud, they are admissible, and it is immaterial whether it be directly shown that the books were received by the trustee from the proper custodian of the corporation. After being admitted, if it should be shown that they are in reality not the books of the corporation, of course the books would avail nothing. But coming from the custody of the trustee, with all of the appearances of genuineness, renders them admissible.

2–5. The guaranty covered renewals of the obligations of the Georgia Paper Company and advances that might be made by the bank to it. In the present case the plaintiff, in its petition, has

seen fit to plant its case upon the allegation that the non-negotiable note was a *renewal* of an existing obligation of the Paper Company, and does not seek to hold that corporation liable upon the theory that any money was advanced to it upon the faith of the note. Neither does it seek to hold the corporation liable upon the original indebtedness. It is therefore unnecessary to determine whether an advance has been shown, or whether the failure to realize upon the non-negotiable note reinstates the indebtedness of the bank to that amount at the date the non-negotiable note was accepted. The plaintiff has laid its case upon an allegation of renewal, and upon that it must stand. A renewal, in its broadest sense, means that which is made anew or re-established. In law it has been defined to be " an obligation on which time of payment is extended." English's Law Dict. It has also been said that it is not a word of art, and has no legal or technical signification; it has in one instance been defined to be the substitution of a new right or obligation for another of the same nature, and in another instance as a change of something old to something new. 24 Am. & Eng. Enc. L. (2d ed.) 465. As applied to promissory notes, the term " renewal" has been held to mean " the re-establishment of the particular contract for another period of time." Kedey *v.* Petty, 153 Ind. 179. It has also been held that there might be such a thing as a renewal where the party was different, provided the obligation was of the same nature, as in a case where a widow gave her note in lieu of the note of her deceased husband for the same amount. Sponhaur *v.* Malloy, 21 Ind. App. 287. It has also been said that whether a new note is a renewal of another note depends upon the intention of the parties. Flanagin *v.* Hambleton, 54 Md. 227. Not only the definition of renewal, but also its application in the cases cited and in similar cases, carries the idea that an obligation is renewed when the same obligation is carried forward by the new paper or undertaking, whatever it may be. There may be a change of parties. There may be an increase of security, but there is no renewal unless the obligation is the same. What makes the renewal is an extension of time in which to discharge the obligation. If the obligation changes, there can be no renewal, because there can be no such thing as the re-establishment of an old obligation by the creation of a new obligation different in character.

At the time the non-negotiable note was taken by the bank the Georgia Paper Company was indebted to it in a sum largely in excess of the amount of that note. The note did not represent any part of this obligation at all. It was the obligation of other parties to the Georgia Paper Company, a new and distinct obligation; while the indorsement of that company (treating the paper, for the purposes of this argument, as if it had been properly indorsed) was an obligation of one liable only in the event the makers of the note, the primary debtors, failed to pay. It was a new obligation undertaken by it at the time the note was indorsed and delivered. It was in no sense a re-establishment or making anew or renewal of its original obligation to the bank. An undertaking to be liable only in the event that another person can not pay can not in law be a renewal of an obligation to pay absolutely and at all events, without reference to the liability of another. The transaction involved in the present case did not re-establish the old contract, but it brought into existence an entirely new contract, in which the terms of the paper company's liability was entirely changed, being in one instance that of a primary debtor and in the other that of a debtor only secondarily liable. It follows that even if the books of the Georgia Paper Company had been admitted in evidence, and had shown that the indorsement was that of the Georgia Paper Company, and the note itself had been admitted in evidence, the plaintiff would still have failed to support the allegations of its petition/ The judgment of non-suit will, therefore, not be reversed.

*Judgment affirmed. All the Justices concur.*