### SHELDON, Collector of Internal Revenue, v. MISSISSIPPI COTTONSEED PRODUCTS CO.

No. 7906.

Circuit Court of Appeals, Fifth Circuit.
Jan. 8, 1936.

HUTCHESON, Circuit Judge, dissenting.

James E. Murphy, Sp. Asst. to Atty. Gen., and R. M. Bourdeaux, U. S. Atty., of Meridian, Miss., for appellant.

Marcellus Green, Garner W. Green, and F. B. Jackson, all of Jackson, Miss., for appellee.

Before SIBLEY, HUTCHESON, and WALKER, Circuit Judges.

### WALKER, Circuit Judge.

The appellee, a Delaware corporation, brought this action to recover the amount, $945, of documentary stamp taxes exacted of it in circumstances mentioned below, with interest thereon. Appellee's original declaration contained two counts, one of which was withdrawn by it. Appellant's demurrer to the remaining count was overruled, and, upon appellant declining to plead further, final judgment was rendered in favor of the appellee. Allegations of the count demurred to showed the following: In July, 1927, appellee issued its bonds, with interest coupons, in the total amount of $1,250,000, and executed its mortgage to secure those bonds, which, in different amounts, were payable serially in successive years, beginning July 1, 1929, and ending July 1, 1942, when $350,000 of the bonds were payable. The mortgage contained a provision which, among other things, empowered the holders of 90 per cent. of the principal amount of bonds outstanding at any time, with the consent of appellee and the corporate trustee named in the mortgage, to assent to and authorize any modification of the provision of the mortgage, such modification to be set forth in a supplemental indenture between the appellee and the trustee in the mortgage. Pursuant to that provision, on or about January 1, 1933, when there had been no default of any kind or character in the payment of the then outstanding bonds amounting to $945,000 by an instrument called "a supplemental indenture," to which appellee, the trustee in said mortgage, and a named bank, depository of 90 per cent. in principal amount of all said bonds then outstanding, were parties, the maturity dates of all then outstanding bonds were extended for periods of five years. That instrument contained recitals to the effect that, due to the chaotic economic conditions for which appellee was in no way responsible, provisions of both the bonds and the mortgage securing them had become impossible of performance in respects mentioned. The depository indorsed on each of the then outstanding bonds the following: "The maturity date of this bond is hereby extended five years. Dated as at July 1, 1933." At the time of the execution of said supplemental indenture appellee issued additional interest coupons to cover interest for the five years for which said bonds were extended, and such coupons were delivered to the holders of said bonds. The above-mentioned supplemental indenture contained, in addition to what said mortgage contained, provisions whereby appellee agreed to do, or refrain from doing, stated things in the conduct of its business; and also provisions which conferred or imposed upon the corporate trustee named in said mortgage specified powers and duties. Upon the Commissioner of Internal Revenue ruling that the transaction evidenced by the above mentioned instruments was subject to the stamp taxes prescribed by Schedule A 1 of title 8 of the Revenue Act of 1926 (44 Stat. 99–101, § 800 et seq., 26 U.S.C.A. § 901, Schedule A (1), and amended by the Revenue Act of 1932, § 721 (47 Stat. 169, 272, 26 U.S.C.A. § 901 note) and demanding of the appellee the payment of such tax in the sum of $945, appellee paid that sum under protest, and duly claimed the refund of the sum so paid, which claim for refund was denied.

The above-cited provision of the Revenue Act of 1926 reads as follows:

"Sec. 800. On and after the expiration of thirty days after the enactment of this Act there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this title, * * * the several taxes specified in such schedule. * * *

"Schedule A.—Stamp Taxes

"1. *Bonds of indebtedness:* On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 5 cents: Provided, That every renewal of the foregoing shall be taxed as a new issue."

So far as is material in this case, the amendment of the just set out provision made by the above-cited provision of the Revenue Act of 1932 consisted in striking from subdivision 1 of said Schedule A the words "5 cents," and inserting in lieu thereof "10 cents."

 The decision of this case turns upon the meaning of the word "renewal" in the above set out proviso, "That every renewal of the foregoing shall be taxed as a new issue." The word "renewal" has different meanings, varying with the subjects with reference to which it is used. One of the definitions of the word "renew" found in Webster's New International Dictionary is: "To grant or obtain extension of; to continue in force for a fresh period; as to renew a note or a bond." As commonly used with reference to notes and bonds, the word "renewal" imports a postponement of the maturity of the obligation dealt with, an extension of the time in which that obligation may be discharged. Lowry National Bank v. Fickett, 122 Ga. 489, 50 S.E. 396, 397; Wilson v. Rousseau, 4 How. 646, 697, 11 L.Ed. 1141; Farmers' Loan & Trust Co. v. Central Park, N. & E. R. R. Co. (C. C. A.) 193 F. 963. With reference to the word "renewal" the following was said in the opinion in the case of Lowry National Bank v. Fickett, supra: "In law it has been defined to be 'an obligation on which time of payment is extended.' English Law Dict. It has also been said that it is not a word of art, and has no legal or technical signification. * * * It has also been held that there might be such a thing as a renewal where the party was different, provided the obligation was of the same nature; as in a case where a widow gave her note in lieu of the note of her deceased husband for the same amount. Sponhaur v. Malloy, 21 Ind.App. 287, 52 N.E. 245. * * * Not only the definition of renewal, but also its application in the cases cited and in similar cases, carries the idea that an obligation is renewed when the same obligation is carried forward by the new paper or undertaking, whatever it may be. There may be a change of parties. There may be an increase of security, but there is no renewal unless the obligation is the same. What makes the renewal is an extension of time in which to discharge the obligation."

It well may be inferred that, in enacting the above set out proviso, the lawmakers contemplated that that proviso would cover such a transaction as the one now in question. It cannot reasonably be supposed that it was intended that an issue of new bonds with interest coupons and maturing at later dates in lieu of previously outstanding similar bonds evidencing the same obligation as to principal and rate of interest would be subject to the tax, but that a change in the previously outstanding bonds by an indorsement thereon postponing the dates of the maturity thereof would not give rise to liability for that tax. Nothing in the language of the statute indicates a purpose to make liability for the tax imposed dependent upon form, rather than upon substance. To say the least, it appears that, consistently with well-recognized usage, a postponement of the maturity of corporate coupon bonds evidencing indebtedness may be described as a renewal of such bonds.

The proviso in question is found in provisions of earlier statutes imposing stamp taxes on bonds and other instruments evidencing indebtedness. We understand that it first appeared in such a connection in section 800 et seq., Schedule A 1 of title 8 of the Revenue Act of 1917, 40 Stat. 300, 321. It was re-enacted without change four times, namely: In the Revenue Act of 1918, title 11, § 1100 et seq., Schedule A 1, 40 Stat. 1057, 1135; in the Revenue Act of 1921, title 11, § 1100 et seq., Schedule A 1, 42 Stat. 303; in the Revenue Act of 1924, title 8, § 800 et seq., Schedule A 1, 43 Stat. 333; and in the Revenue Act of 1926. It appears that that proviso has been construed by officials charged with the enforcement of it as meaning postponement of the maturity of bonds referred to, and covering such a transaction as the one now in question, and that that construction has been impliedly approved by Congress. The following is article 8 of Treasury Regulations 71, relating to Stamp Taxes under title 8 of the Revenue Act of 1926, as amended by the Revenue Act of 1932: "Art. 8. *Bonds renewed by agreement extending mortgage.*—An agreement extending a mortgage upon maturity where a bond is secured by the mortgage and such agreement operates to renew the bond, subjects the latter to stamp tax as a renewal."

The just set out Regulation was first issued in the same language as article 4 of Treasury Regulation 55 relating to stamp taxes under the Revenue Act of 1918, and has been carried forward into Regulations relating to stamp taxes under subsequent revenue acts, and is still in force. Even if the meaning of the proviso in question properly could be regarded as doubtful, great weight should be given to the construction of it by the department charged with its execution, and the repeated re-enactment by Congress, without change, of the proviso which pre-

viously had received long-continued executive construction is an adoption by Congress of such construction. Komada & Co. v. United States, 215 U.S. 392, 30 S.Ct. 136, 54 L.Ed. 249; Massachusetts Mutual Life Ins. Co. v. United States, 288 U.S. 269, 273, 53 S.Ct. 337, 77 L.Ed. 739; Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 293, 55 S.Ct. 158, 79 L. Ed. 367; Herring v. Commissioner, 293 U. S. 322, 323, 55 S.Ct. 179, 79 L.Ed. 389.

Counsel for appellee suggested in argument that the above set out Regulation is rendered inapplicable to the facts of the instant case by the circumstance that the agreement to extend the maturity dates of bonds was made in January, 1933, and the earliest maturity of any bond dealt with by that agreement was in July, 1933. Nothing in that Regulation indicates that the words "an agreement extending a mortgage upon maturity" referred only to an agreement made at or after the date of the maturity of the mortgage. It is quite manifest that an agreement extending a mortgage upon maturity is covered by the language used, though that agreement was entered into before the mortgage matured.

In behalf of the appellee it was contended that the agreement whereby the maturity dates of outstanding bonds were extended was kept from being "a renewal," within the meaning of the above set out proviso, by the circumstance that the making of that agreement was an exercise of a power conferred when those bonds were issued, with the result that that agreement effected a mere re-arrangement of the relations between the maker of those bonds and the holders of them. The provision of the mortgage authorizing the transaction entered into in 1933 to be consummated if consented to by the holders of 90 per cent. in principal amount of the then outstanding bonds did not make that transaction different in its nature or effect from what it would have been if the mortgage had not contained the above-mentioned provision and that transaction had been consented to by the holders of all then outstanding bonds, instead of by the holders of 90 per cent. in principal amount of

such bonds. A valid agreement whereby the maturity of bonds is postponed for a definite time is, within the meaning of the proviso in question as it long has been authoritatively construed, a renewal of such bonds, whether the making of such agreement was authorized when the bonds were issued, or at a subsequent time was proposed and assented to by the parties in interest. The agreement entered into in 1933 having effected a renewal of then outstanding bonds, and such renewal being the subject of the tax imposed, it is not material in this case what other changes in the relations of the parties in interest were brought about by that agreement.

Though the proviso in question, when it was first enacted, may have been open to a construction different from that adopted by the officials charged with its enforcement, that administrative construction must be followed because it has been approved by Congress. We conclude that, within the meaning of that proviso, what occurred was a renewal of the bonds the maturities of which were postponed, and that the above-mentioned ruling was erroneous.

The decree is reversed.

HUTCHESON, Circuit Judge (dissenting).

I think the majority opinion very well presents the view that by no great extension of its terms, the taxing act in question can be made to cover appellee's case. I differ with the majority on the flat ground that taxing acts should not be extended by construction or analogy. They should, they do, extend to those their terms embrace, but do not extend to others.

It is true enough that the effect of what was done here was quite like that a renewal would have brought about. I do not think it true that what occurred was a renewal. Appellee, with the consent provided in the instrument in advance, changed some of its terms, including the length of time the bonds were to run. The statute makes no provision for taxing this. It taxes the execution of new instruments, or the renewals of old ones. I think neither occurred here.