**CENTRAL STATES LIFE INS. CO. v.
SHEEHAN, Collector of Internal
Revenue.**

No. 11786.

Circuit Court of Appeals, Eighth Circuit.

Jan. 21, 1941.

Rehearing Denied Feb. 14, 1941.

Joseph H. Grand and Jones, Hocker, Gladney & Grand, all of St. Louis, Mo., for appellant.

Harry Marselli, Sp. Asst. to Atty. Gen., (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. L. Monarch, and Lyle M. Turner, Sp. Assts. to Atty. Gen., Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and S. Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by appellant to recover from appellee as Collector of Internal Revenue, certain documentary stamp taxes paid by it under protest. The case was tried on written stipulation of facts which were later embodied in findings of the court. The court found the issues in favor of the defendant and judgment of dismissal was accordingly entered from which this appeal is prosecuted. The parties will be referred to as they appeared below.

The documents upon which the stamp tax was assessed are of two different characters. The first count or cause of action involves a claim of taxes due upon bonds issued under the following circumstances: Plaintiff, a corporation, purchased certain real estate from the Bellco Realty Company, subject to an outstanding first deed of trust securing a bond issue

in the principal sum of $833,000. These bonds were executed by the Bellco Realty Company, a corporation. After plaintiff became owner of the property, it entered into a legal agreement with the Southwestern Bell Telephone Company, a corporation, the then holder and owner of the bonds, for a readjustment of the indebtedness. The agreement provided that plaintiff should pay all current and past due taxes and submit to the holder of the bonds a new issue of 5 per cent bonds. The agreement provided for a transfer of the property to a straw party, who, on or before a stated date, was to issue $500,000 face value of 5 per cent bonds secured by a first mortgage deed of trust upon the property. The straw party was then to turn over the $500,000 face value of new bonds to the holder and owner of the old bonds in exchange therefor. The straw party was then to cancel the old bonds and reconvey the property to plaintiff, subject to the new bond issue and mortgage. Pursuant to this agreement, the property was conveyed to N. M. Halligan by warranty deed, subject to the outstanding encumbrances, who in turn executed a deed of trust to secure payment of $500,000 face value real estate mortgage 5 per cent bonds. The new bonds bore the following legend stamped across their face:

"Notice to Owner and Holder.

"This bond and all attached interest coupons are subject to the terms and conditions of letter agreement, dated October 31, 1933, between Central States Life Insurance Company and Southwestern Bell Telephone Company, providing for issuance of this bond."

The deed of trust, bonds, and interest coupons were all executed and delivered by Halligan on January 1, 1934, while acting in the capacity of straw party, and in strict accordance with the terms of the agreement between plaintiff and the Southwestern Bell Telephone Company. Halligan at once reconveyed the property to plaintiff by special warranty deed, subject to the outstanding liens including the trust deed securing the new bond issue.

It was the contention of plaintiff below, and it makes the same contention here, that these bonds were not subject to the stamp tax because they were not issued by a corporation. The Revenue Act relied upon (Act 1926, c. 27, 44 Stat. 9, as amended, Sec. 800), so far as here material, provides for stamp tax upon "all bonds, debentures, or certificates of indebtedness issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 5 cents: Provided, that every renewal of the foregoing shall be taxed as a new issue." There can be no doubt that these instruments, in form at least, are bonds. Willcuts v. Investors' Syndicate, 8 Cir., 57 F.2d 811. But it is urged that they were not issued by a corporation. As already observed, the parties stipulated and the court found that Halligan was a straw party. The property in fact at all times material to the transaction here involved belonged to plaintiff. The bonds were issued in payment or discharge of an encumbrance upon that property. They were delivered to the Telephone Company in exchange for the old bonds which were taken up and cancelled, and the legal title to the real estate was immediately retransferred to plaintiff. The bonds showed on their face that they were issued subject to the terms and conditions of an agreement between plaintiff and the Southwestern Bell Telephone Company. This agreement by this reference became a part of the bonds so that plaintiff was a party to the new bonds. The whole transaction was for the purpose of carrying out a corporate function of the plaintiff. The transaction was controlled and dominated by the plaintiff, and the bonds were issued for and on its behalf. The corporation, instead of authorizing its officers to execute these bonds, authorized this straw party to execute them. The straw party was the agency or conduit through whom the plaintiff conducted this transaction. Van Raalte v. Epstein, 202 Mo. 173, 99 S. W. 1077; Houtz v. Hellman, 228 Mo. 655, 128 S.W. 1001. The Act in question is a revenue measure and is not to be restricted by technical refinements in construction. Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111; Willcuts v. Investors' Syndicate, supra. We think the transaction here involved is within the purview of the statute and that the bonds are "corporate securities" subject to the stamp tax.

Counsel for appellant treats the instruments described in Counts 2, 3, 4 and 5 of

plaintiff's complaint as being of the same general class, and we shall treat them as such. We shall take the instruments described in count 2 as typical. These were instruments in respect to which plaintiff entered into renewal or extension agreements with the holders. Thus, count 2 involves notes issued under the following circumstances: Prior to February 15, 1934, plaintiff became the owner of certain real estate in St. Louis known as the Winston Churchill Apartment. Title to this property was acquired by plaintiff as a result of a consolidation with the American National Assurance Company, which was the owner of the property at the time of the consolidation subject to a mortgage deed of trust securing the payment of first mortgage 6 per cent serial notes. This trust deed and the serial notes were executed by one John J. Bartin, and dated February 15, 1928. The notes numbering 1 to 1000, were payable to bearer, negotiable by delivery, and were each for the face amount of $500. Interest coupons bearing numbers corresponding to the notes were executed on the same day. The notes embodied provision for authentication by the trustee and for redemption before maturity. Under the terms of the deed of trust, provision was made for acceleration of maturity in the event of any default by the obligor.

On or about February 15, 1934, plaintiff entered into a written agreement with a committee representing the holders of all the notes executed by John J. Bartin, which agreement provided for the extension of the time for payment of the notes then outstanding in the principal amount of $415,000. It does not appear that John J. Bartin was a party to this agreement and his liability on the original unextended notes was expressly recognized. The extension agreement contained provision that new interest coupons numbered to correspond to the bonds should be issued by plaintiff, and that there should be stamped across the face of the notes a legend stating that the time for payment of the principal of the notes had been extended in accordance with the terms and provisions of the supplemental indenture dated February 15, 1934, between Central States Life Insurance Company and the members of the committee acting for the holders of the notes. There was also provision for a sinking fund to be created out of the net earnings of the property to provide for the retirement and cancellation of the notes. The holders of the notes waived certain provisions of the deed of trust as originally drawn, and it was provided that plaintiff should not be personally liable for the making of the deposits under the new agreement, and that a failure on its part to carry out the terms of the supplemental agreement should constitute a default and be ground for foreclosure.

■■ It is urged by appellant that the extension and renewal agreements, while executed by plaintiff, related to real estate mortgage notes executed by individuals long before plaintiff had become the owner of the property. It is also urged that the instruments were not bonds, notes or other instruments issued by a corporation. For the reasons heretofore stated with reference to the instruments described in count 1 of the complaint, we are of the view that the statute is broad enough to cover instruments issued by a corporation with interest coupons attached or in registered form known generally as corporate securities. Willcuts v. Investors' Syndicate, supra. The instruments were renewed and the statute provides that every renewal shall be taxed as a new issue. The renewals were all in furtherance of a corporate function, and as said in United States v. Powell, 4 Cir., 95 F.2d 752, 754, "The object of the stamp tax provisions of the Revenue Laws is evidently to place a tax on the carrying on of a corporate function."

■ The renewal of these instruments even though they were originally issued by an individual, was effected by the corporation. The fact that plaintiff did not assume personal liability for the payment of the instruments under the terms of the renewal is not controlling. Its property was liable and it agreed in some instances at least to apply the net proceeds arising from the property to the payment of the debt. The exact limit of the taxpayer's undertaking or liability is not controlling. Lederer v. Fidelity Trust Company, 267 U.S. 17, 45 S.Ct. 206, 69 L.Ed. 494. If these instruments had been executed by a corporation in the first instance, there would be no doubt that they were subject to the stamp tax. Here, they were extended and renewed by or at the instance

of plaintiff and because of its contract obligations which became a part of the instruments when so renewed or extended.

The judgment appealed from is therefore affirmed.