**GEDEX REALTY CORPORATION v. HIGGINS, Collector of Internal Revenue.**

District Court, S. D. New York.

Oct. 29, 1942.

Wickes, Neilson & Riddell, of New York City (Eustace W. Tomlinson, of New York City, and Hugh R. Dowling, of Baltimore, Md., of counsel), for plaintiff.

Mathias F. Correa and Arnold C. Stream, both of New York City, for defendant.

RIFKIND, District Judge.

The facts in this case having been stipulated, only a question of law is presented for decision. The question is whether the stamp tax paid by plaintiff was erroneously or illegally assessed and collected. A timely claim for refund has been made and rejected.

The statute under which the assessment was made is Section 800 of the Revenue Act of 1926, as amended by Section 721 of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, pages 284, 288. That section reads in part as follows:

"Sec. 800. On and after the expiration of thirty days after the enactment of this Act there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this title, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, by any person who makes, signs, issues, sells, removes, consigns, or ships the same, or for whose use or benefit the same are made, signed, issued, sold, removed, consigned, or shipped, the several taxes specified in such schedule. * * *"

"Schedule A. 1. Bonds of indebtedness: On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each of $100 of face value or fraction thereof, 10 cents: Provided, That every renewal of the foregoing shall be taxed as a new issue: * * *."

Maryland Casualty Company had guaranteed payment of interest and principal of certain mortgages (or in some instances, payment of any deficiency in the event of foreclosure) which formed the security underlying several issues of bonds sold to the public. With the advent of the depression in 1930, the principal obligors on these

mortgages were unable to meet their liabilities. Whereupon Maryland Casualty Company caused the plaintiff to be formed and to acquire title to the real property which was subject to the mortgages. Plaintiff did not assume payment of the mortgages.

As owner of the several parcels of real estate so acquired, plaintiff addressed a communication to the bondholders under date of August 10, 1933, requesting them to assent to a plan of readjustment whereby the maturity of the bonds was to be postponed five years from their due date and the interest rate was to be reduced to a rate of 2½% for the first three years and 3% thereafter.

In return plaintiff promised the bondholders:

1. To apply all net income remaining after payment of operating costs, repairs, taxes, and the interest at the reduced rate, to the payment of additional interest up to a maximum rate of 5½%;

2. To deposit with the trustee all income after payment of interest at the rate of 5½% as a sinking fund for the payment of the principal of the bonds at their extended maturity;

3. To cause an annual audit not later than May 15th of each year by a New York certified public accountant.

The simple English words "promise" and "agree" were adroitly omitted from the letter sent by the plaintiff to the bondholders under date of August 10, 1933. The meaning is clear, however, and counsel for plaintiff do not dispute that plaintiff was under a personal obligation to employ the funds as indicated.

In a letter of November 15, 1933, addressed to the mortgage trustee the language of promise is clearer. There Gedex promised, among other things, to deposit the net proceeds of the sale of the property into a sinking fund for the payment of the bonds at maturity and to keep the property insured. Furthermore, it is to be noted, that in a letter of plaintiff addressed to the mortgage trustee under date of January 23, 1934, the following language occurs:

"Gedex Realty Corporation and Maryland Casualty Company have heretofore executed * * * agreements * * * wherein said Gedex Realty Corporation and Maryland Casualty Co. did assume certain obligations in consideration of certain holders of First Mortgage Bonds * * * consenting to a readjustment of said First Mortgage Bonds * * *".

Since the plan was essentially for its benefit, Maryland Casualty Co. consented thereto, thus remaining liable on its guarantee. By February, 1935, a majority of the bondholders had consented to the plan and the bonds were stamped with a legend to acknowledge the alteration in their terms.

It is plaintiff's contention that from these facts it is not possible to find that any security was "issued" or "renewed" and, therefore, that no tax was collectible under the quoted statute. In summary, its argument is that the "issuance" of a security involves a promise to pay. A "renewal" involves a new promise to pay. Since plaintiff neither made the original promise nor made the new promise to pay the mortgage indebtedness, no taxable transaction occurred. Plaintiff contends that the transaction was a mere agreement between bondholders and a surety to postpone payment on a surety bond.

But plaintiff is in error in the construction it places upon the stipulated facts. This was not a mere agreement between bondholders and a surety; nor was it an agreement to postpone payment on a surety bond. The agreement was between the owner of real property subject to mortgage and the holders of bonds secured by that mortgage. One of the objects and terms of the agreement was to postpone the maturity date of the bonds. This is clear from the text of the letter of August 10, 1933, and is conclusively established by the language of the form letter of transmittal which was part of the letter of August 10th and which must be read as part thereof. The letter of transmittal prepared for use by the assenting bondholders contains the provision that the signer agrees, "that five years from the present due date of the bond(s) shall henceforth be considered the due date under said bond(s) and the mortgage mentioned therein".

Moreover, plaintiff's reasoning involves a non sequitur. Simply because plaintiff did not undertake to pay principal and interest, it concludes that plaintiff made no promise to pay at all. But that is not the fact. It did promise to apply the income in a specified manner to interest and principal. Such a promise is similar to an

undertaking to pay out of a specified fund or source. That promise was one of the considerations which moved to the bondholders in exchange for their extension of the maturity date of the obligations and the reduction in interest. Whether the agreement was bilateral, or unilateral in the technical sense of the exchange of a promise for an act makes no practical difference; and no legal difference is suggested by the language of the statute. Nor is it accurate to describe the transaction, as urged by plaintiff, as a promise made to the bondholders in exchange for forbearance merely. Plaintiff and the Maryland Casualty Company bargained for and obtained an *assurance* of forbearance for five years. It is that assurance which brings the transaction within the scope of an extension or renewal which are subjected to tax by the statute. Sheldon v. Mississippi Cottonseed Products Co., 5 Cir. 1936, 81 F.2d 169, certiorari denied 297 U. S. 721, 56 S.Ct. 599, 80 L.Ed. 1005. Campbell River Timber Co. v. Vierhus, 9 Cir. 1936, 86 F.2d 673, 108 A.L.R. 763; Edwards v. Goode, 5 Cir.1916, 228 F. 664; Central States Life Ins. Co. v. Sheehan, 8 Cir.1941, 117 F.2d 46; Regulations 71, Article 9, Internal Revenue Bureau, 1932 Edition.

That plaintiff, though not the original obligor, is a properly taxable party, is made very clear by the language of the statute which imposes the tax upon various parties including one "for whose use or benefit" the obligation is issued. Raybestos-Manhattan, Inc., v. United States, 1935, 296 U.S. 60, 56 S.Ct. 63, 88 L.Ed. 44, 102 A.L.R. 111; United States v. Revere Cooper & Brass, Inc., 2 Cir.1938, 100 F.2d 391.

See also Article 136 of Regulations 71, (1932 Edition) which provides in part as follows:

"Any party to a taxable transaction is responsible to the Government for affixing and canceling stamps in the required amount".

The argument that the issuance or renewal of a surety or indemnity bond by Maryland Casualty Co., an insurance company, is not taxable is disposed of by the evident fact that that transaction is not the subject of this tax. This tax is imposed upon the renewal or extension of the obligations of real estate corporations which are taxable. The complaint should be dismissed with costs.