**PENNSYLVANIA CO. FOR INSURANCES ON LIVES AND GRANTING ANNUITIES v. ROTHENSIES, Collector of Internal Revenue.**

No. 8532.

Circuit Court of Appeals, Third Circuit.

Argued March 7, 1944.

Decided Nov. 28, 1944.

Francis H. Bohlen, Jr., of Philadelphia, Pa. (Saul, Ewing, Remick & Harrison, of Philadelphia, Pa., and H. Brua Campbell, of New York City, on the brief), for appellant.

Mamie S. Price, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Robert N. Anderson, Sp. Assts. to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, JONES, and Mc-LAUGHLIN, Circuit Judges.

JONES, Circuit Judge.

This appeal is by The Pennsylvania Company for Insurances on Lives and Granting Annuities (hereinafter referred to as the Pennsylvania Company or as the Trustee) from a judgment for the defendant entered by the court below in a suit instituted jointly by the Pennsylvania Company and the Wabash Railroad Company (an Ohio corporation) against the defendant Collector for the recovery of certain stamp taxes assessed against the Trustee and paid under protest. No claim for refund was filed by either the Wabash Railroad Company or by the receivers of its predecessor, the Wabash Railway Company (an Indiana corporation), and, at trial, the claim of the

Wabash Railroad Company to a refund was not pressed. Only the plaintiff-Trustee has appealed.

The facts upon which the appellant bases its contentions in this court may be summarized from the supported findings of fact made by the learned trial judge as follows:

Between August 1, 1922, and February 1, 1929, the Wabash Railway Company, the Indiana corporation, in order to finance its acquisition of railroad equipment entered into a series of equipment trust agreements and leases with certain corporate trustees under the well-known "Philadelphia Car Trust" plan. See Rawle, 8 A.B.A.R., p. 277 (1885); Baldwin, American Railroad Law, p. 197 (1904).

In accordance with the plan, the designated trustee purchased the desired equipment from the vendors and paid for it out of the proceeds received from trust certificates which were issued by the trustee and sold to investors. The trust certificates carried semiannual dividend warrants and were to mature serially in annual installments. Upon the trustee's acquisition of the equipment, to which it took title in its own name, it leased the same to the Railway Company at an annual rental sufficient to pay the principal of the trust certificates at their respective maturities and also to pay all dividend warrants when due. By June 1, 1929, the Pennsylvania Company had become the successor trustee in all of the trust agreements and leases above referred to.

On December 31, 1931, the Wabash Railway Company was placed in the hands of receivers appointed by a United States District Court for Missouri. Nearly one-half of the Railway's rolling stock or other operating equipment then on hand had been acquired under the equipment trust agreements and leases above mentioned. It was, moreover, the Railway's newest equipment. The receivers being unable later to meet the rentals due under the extant equipment trust leases, the Court on May 20, 1933, entered an order directing them to make no "further payments on account of matured and/or maturing principal and/or interest upon any of" the equipment trust certificates as specifically identified in the order. The court order further directed the receivers to "negotiate with the Trustee and/or the holders of the above described Equipment Trust Obligations for the formulation of a plan for the refinancing or extension of the principal of said Equipment Trust Obligations upon terms that will preserve the equipment for use in the operation of the receivership estate and will readjust the amounts of the annual payments in amortization of the principal thereof".

The receivers did so negotiate and, as of June 1, 1933, entered into a written agreement with the holders of the subject outstanding equipment trust certificates. The agreement recited that the receivers had proposed, and that the subscribing certificate holders had approved, that "all installments of principal falling due under the Equipment Trust agreement in the years 1933 and 1934 be deferred for a period of three years * * *." Each subscribing certificate holder agreed not to take any action or require or request the Trustee to take any action and not to do any act which would cause the Trustee to take any action under the equipment trust because of the failure or refusal or default of the Railway or its receivers in respect of the rentals or principal due under the equipment trust agreement or lease.

Pursuant to the extension agreement, the subject equipment trust certificates were surrendered by the holders thereof to the treasurer of the receivers who endorsed on each certificate, in accordance with the agreement, a legend stating in substance that the certificate was subject to the agreement and that copies of the agreement were on file with the Trustee and with the receivers. The certificates, when so endorsed, were returned to their respective owners or holders.

A similar extension agreement between the receivers of the Railway and holders of equipment trust certificates was executed as of February 1, 1936, and was carried into effect in the same way as was the agreement of June 1, 1933.

The receivers' treasurer with his staff acted as the Trustee's register, or transfer agent, with respect to the equipment trust certificates during the receivership just as he had done as an officer of the Wabash Railway Company prior to the receivership and as he did as an officer of the successor Wabash Railroad Company after the receivership. While the Trustee did not sign the extension agreements, it knew that they were being negotiated and received copies of them following their execution which it placed in its files. It was not the policy of the Trustee to act in respect of the equipment trusts by repossessing itself of the equipment upon the lessee's default un-

less it was requested by the certificate holders so to do.

The extension of the maturity dates of the certificates was for the use and benefit of the receivers of the Railway Company and aided them in their operation of the railroad's properties and their administration of its affairs. The extensions also enured to the benefit of the Trustee in the administration of its trust duties.

The equipment trust certificates, which were on the usual engraved form used for corporate securities with dividend or interest coupons attached, were registered as to principal only.

The Commissioner of Internal Revenue, holding that the extensions of the indebtedness, worked by the agreements, constituted a renewal of the equipment trust certificates within the meaning of Sec. 800 of the Revenue Act of 1926, c. 27, 44 Stat. 9, as amended by Sec. 721 (a) of the Revenue Act of 1932, c. 209, 47 Stat. 169,[1] accordingly assessed a commensurate tax against the Trustee which the Trustee paid to the defendant Collector under protest. The funds required for the payment were furnished by the receivers' check to the order of the Trustee which the Trustee in turn endorsed to the order of and delivered to the Collector.

That the trust certificates were corporate securities within the purview of the pertinent statutory provisions is hardly open to question. In fact, we understand the appellant to concede as much. In any event, we have no difficulty in concluding that the trust certificates were corporate securities and as such fall within the category of the statute. Cf. Lederer v. Fidelity Trust Co., 267 U.S. 17, 21-22, 45 S.Ct. 206, 69 L.Ed. 494. The appellant's contentions, briefly stated, are rather (1) that the extension of the maturities of the certificates did not constitute a "renewal" of them and (2) that the Trustee, not having affirmatively made itself a party to the extension agreements, was not liable for the tax.

In the light of the undisputed facts as above recited, we fail to see how the Commissioner's action can possibly be thought to be error. The appellant's argument that the extensions were not renewals because the Trustee did not sign the extension agreements disregards the intended as well as actual effect of the completed arrangements. It will hardly be disputed that, after the agreements had been executed and the outstanding certificates had been made subject thereto, the Trustee was just as incapable for the extended period of three years of proceeding adversely under the equipment trust agreements and leases for a default in the payment of rentals by the Railway or its receivers as it would have been had it expressly made itself a party to the extensions. By the extension agreements, the cestuis effectually restrained the Trustee from taking action to repossess itself of the equipment because of the Railway's accrued and threatened defaults in the payment of rentals. The greatest value of the trust res lay in its continued utilization by the Railway as a going concern in the hands of its receivers. In fact, the court's direction to the receivers to negotiate maturity extensions with either the Trustee or the certificate holders or both had for its expressed purpose the preservation of "the equipment for use in the operation of the receivership estate * * *." We think it is clear that the agreements competently effected an extension of the trust certificates and the maturity of the indebtedness evidenced by them.

---

[1] 'Sec. 800 of the Revenue Act of 1926 provided in material part as follows:

"Sec. 800. * * * there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates * * * of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A * * *, or for or in respect of the vellum, parchment, or paper upon which such instruments, * * *, are written or printed, by any person who makes, signs, issues, sells, removes * * *, or for whose use or benefit the same are made, signed, issued, sold, removed, * * *, the several taxes specified in such schedule. * * * "

Schedule A of the Revenue Act of 1926 as amended by Sec. 721(a) of the Revenue Act of 1932 provided, inter alia, that

"I. Bonds of indebtedness: On all bonds, debentures, or certificates of indebtedness issued by any corporation and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 10 cents: Provided, That every renewal of the foregoing shall be taxed as a new issue: * * *."

An extension of an indebtedness in such circumstances constitutes a renewal of the securities, which evidence the indebtedness, within the meaning of the statutory provisions now under consideration. The word "renewal", when used in like context, has been construed as synonymous with extension. See Campbell River Timber Co. v. Vierhus, 9 Cir., 86 F.2d 673, 674, 675, A. L.R. 763; Sheldon v. Mississippi Cottonseed Products Co., 81 F.2d 169, 171, 5 Cir., certiorari denied 297 U.S. 721, 56 S.Ct. 599, 80 L.Ed. 1005. But, the appellant reminds us that tax statutes are to be strictly construed and are not to be extended by implication beyond the clear import of their words, citing United States v. Merriam, 263 U.S. 179, 44 S.Ct. 69, 68 L.Ed. 240, 29 A.L. R. 1547, and Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211. We are well aware of that rule of construction and mean to give it appropriate effect in any relevant setting. We do not apprehend, however, that the rule requires that we arbitrarily reject the plain and reasonable meaning of a generic term in evident denial of the clear legislative intent which it is used to express. "The reach of a taxing act whose purpose is as obvious as the present is not to be restricted by technical refinements." Raybestos-Manhattan, Inc. v. United States, 296 U.S. 60, 63, 56 S.Ct. 63, 65, 80 L.Ed. 44, 102 A.L.R. 111.

The Trustee's further contention is that, even though there was a renewal of the equipment trust certificates, still the Trustee was not assessable with the tax because it was not a party to the extension agreements which effected the renewal. In answer to this, it might reasonably be said that the Trustee's conduct during and after the negotiation and execution of the extension agreements required it to abide by their provisions. Where a Trustee's action in respect of its trust is permissibly directed and controlled by the desires of the cestuis, it would require more than passive inaction on the part of the Trustee in order that it might dissociate itself from an alteration in the trust validly made binding upon the cestuis. But, however that may be, after the trust certificates had been made subject to the extension agreement, the Trustee remained a party to the renewed certificates just as it had been before the renewal. The Act taxes a renewal as a new issue and a party to an issue, when once renewed, is assessable with the tax. Furthermore, with the renewal conceded, the Trustee must also concede that at least the receivers were liable for the tax. Yet it was the receivers who actually paid the tax by supplying the Trustee with the funds for that purpose. Substantially, therefore, the Trustee is without standing to claim a refund merely because the tax was assessed against it.

The judgment of the District Court is affirmed.