GEORG JENSEN, INC., Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 178, Docket 25787.

United States Court of Appeals Second Circuit.

Argued Feb. 4, 1960.

Decided March 4, 1960.

John J. Loflin, Jr., New York City (Kelley, Drye, Newhall & Maginnes and John J. Costello, New York City, on the brief), for plaintiff-appellant.

Charles T. Beeching, Jr., Asst. U. S. Atty., New York City (Marguerite R. de Smet, Asst. U. S. Atty., and S. Hazard Gillespie, Jr., U. S. Atty. for Southern Dist. of New York, New York City, on the brief), for defendant-appellee.

Before MEDINA and WATERMAN, Circuit Judges, and MADDEN, Judge, United States Court of Claims.\*

MEDINA, Circuit Judge.

In the spring of 1946 Georg Jensen, Inc. negotiated the purchase of the premises 680–684 Fifth Avenue, New York City from John D. Rockefeller, Jr. for $2,500,000. The purchase price was to be a $500,000 cash down payment and a purchase money bond and mortgage for the balance. An integral part of the deal was that the corporation would be under no obligation to pay the balance of the purchase price represented by the purchase money bond and mortgage; but that Rockefeller would look to the land as his security. This is a far from uncommon arrangement in New York City and in other localities where real estate is often purchased and sold for what might seem to be fantastically large sums of money, and where it is part of the understanding upon which the transaction is made that there shall be no personal obligation on the part of the individual or corporation who expects to take title. Accordingly, as is done every day in New York City, the contract of purchase executed on March 14, 1946 was between John D. Rockefeller, Jr. and Frederick Lunning, president of Jensen. Doubtless Lunning was a dummy or strawman in the sense that using him as the purchaser was part of the perfectly legitimate means adopted to make sure that the corporation would be under no personal obligation to pay the balance due after the signing of the contract and the making of the down payment. Lunning assigned the contract on March 22, 1946 to John T. Javasile, who may also be regarded as a dummy or strawman but only in the sense above described. On March 26, 1946 Rockefeller and his wife executed and delivered a deed of the property to Javasile, and he in turn executed a purchase money bond and mortgage for the balance of $2,000,000. In accordance with the terms of the purchase agreement of March 14, 1946 both the bond and the mortgage contained provisions to the effect that "no principal, disclosed or undisclosed, of the mortgagor, shall be deemed to be personally liable for the payment of the said principal sum, or the interest thereon." Doubtless Javasile was liable, as he had assumed the obligations of Lunning in the assignment of March 22, 1946. The final step in the transaction was the execution and delivery by Javasile on March 26, 1946 of a deed conveying the property subject to the mortgage to the corporation, plaintiff Georg Jensen, Inc.

Documentary Stamp Taxes in the amount of $1870 were affixed to each of two extension agreements made December 6, 1950 and July 21, 1952 extending the time of payment of the $1,700,000 balance of the principal indebtedness due on the bond on these two dates, first to October 31, 1952 and then to April 30, 1954. Each of these extension agreements was signed by Jensen which has since the conveyance to it by Javasile had complete ownership, use and control of the property. Each extension agreement contained the following paragraph:

"It is further understood and agreed that the party of the second part is not, and shall not hereby become, personally liable for the payment of the said principal sum or the interest thereon or upon any other covenant or obligation contained in the aforesaid mortgage or bond, provided, however, that nothing herein contained shall affect or impair the lien of said mortgage as a valid first purchase money mortgage for

---

\* Sitting by designation.

the said sum of $1,700,000, and interest on the premises therein described or the enforcibility of said mortgage as such against the said mortgaged premises."

After claims for refund were rejected this action was brought to recover the amounts thus expended by Jensen in Documentary Stamp Taxes; and the sole question for decision is whether the documents were such as to require the affixation of the stamps. On cross-motions for summary judgment, on stipulated facts, the District Court granted defendant's motion and dismissed the complaint. The opinion below is reported at 173 F.Supp. 762.

The controlling legislation is in the Internal Revenue Code of 1939, as amended, Sections 1800 and 1801, 26 U. S.C.A. §§ 1800, 1801, the pertinent portions of which are as follows:

"§ 1800. Imposition of tax.

"There shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in sections 1801 to 1807, inclusive * * * the several taxes specified in such sections."

"§ 1801. Corporate securities.

"On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 11 cents: Provided, That every renewal of the foregoing shall be taxed as a new issue: * * *"

We cannot agree that "the bond here involved falls squarely within the statute," as held below. The bond was not an obligation of the corporation nor was it intended to be such. The extension agreements were executed by the corporation but the tax is payable only on a renewal of "the foregoing," and "the

foregoing" are "bonds, debentures, or certificates of indebtedness issued by any corporation." This is all there is to the case.

It is immaterial that Jensen now holds the title to the property and will continue to enjoy the incidents of ownership until such time as there is a default in the payment of the balance due on the purchase price and there is a foreclosure of the mortgage. It is equally immaterial that Lunning and Javasile were acting for the benefit of Jensen. They did not execute any documents or otherwise conduct themselves in such fashion as to create any obligation on the part of the corporation to pay the balance due on the bond. As there was no corporate obligation arising out of the execution and delivery of the bond, we hold that it was not a "bond * * * issued by any corporation."

Moreover, it is clear that the transaction was consummated in its present form solely as a means of effecting the intention of the parties and without any purpose or intent to evade the law requiring the affixation of Documentary Tax Stamps on the instruments defined in the statute.

None of the cases relied upon by appellee and by the District Court were decided under the Internal Revenue Code of 1939 that is now before us for interpretation. Some of these cases, e. g., United States v. Powell, 4 Cir., 1938, 95 F.2d 752; Central States Life Ins. Co. v. Sheehan, 8 Cir., 1941, 117 F.2d 46, speak of the test in terms of furtherance of a "corporate function." This is understandable in the light of the wording of the statute as it then read. Thus the Revenue Act of 1926, Chapter 27 of the Acts of Congress First Session, 1926, 44 Stat. 9, contains, under the Title Stamp Taxes, the following preliminary general provisions:

"Sec. 800. On and after the expiration of thirty days after the enactment of this Act there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of

indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this title, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, by any person who makes, signs, issues, sells, removes, consigns, or ships the same, *or for whose use or benefit the same are made, signed, issued, sold, removed, consigned, or shipped,* the several taxes specified in such schedule. The taxes imposed by this section shall, in the case of any article upon which a corresponding stamp tax is now imposed by law, be in lieu of such tax." (Emphasis supplied.)

Schedule A provides for the affixation of documentary stamps on "all bonds, debentures, or certificates of indebtedness issued by any corporation" and other instruments as defined therein. The words in said Section 800, "or for whose use or benefit the same are made, signed, issued, sold, removed, consigned, or shipped" were eliminated when the 1939 Internal Revenue Code with which we are now concerned was passed. Moreover, the cases thus relied upon by appellee and by the Court below were decided prior to the holding by the Supreme Court in United States v. Leslie Salt Co., 1956, 350 U.S. 383, 76 S.Ct. 416, 423, 100 L.Ed. 441, that:

> "These taxes are based not upon the nature of the transaction involved, but upon the character of the instruments employed. As long ago as 1873, this Court said: 'The liability of an instrument to a stamp duty, as well as the amount of such duty, is determined by the form and face of the instrument, and cannot be affected by proof of facts outside of the instrument itself.' United States v. Isham, 17 Wall. 496, 504, 21 L.Ed. 728."

It is true that the statutory language above quoted was not specifically relied upon by the Eighth Circuit in Sheehan. In any event, we do not agree with the reasoning that, as the transaction was in furtherance of a corporate function and for the benefit of the corporation the bond should be treated as a corporate bond for the purposes of the Revenue Act requiring the affixation of Documentary Stamp Taxes to bonds "issued by any corporation." We hold the statute means precisely what it says.

Judgment reversed with a direction to grant summary judgment for plaintiff.